# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHERI S.[1]**, | Case No. 6:20-cv-80-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Robyn M. Rebers, ROBYN M. REBERS LLC, PO Box 3530, Wilsonville, OR 97070. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Joseph J. Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Cheri S. (Plaintiff) seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner), which denied Plaintiff's application for

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

disability insurance benefits, (DIB), and which also denied her application for supplemental security income (SSI). For the reasons stated below, the Court remands for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for both DIB and SSI on August 24, 2015.[2] AR 287-96. Initially, she alleged on both applications that her disability began on March 31, 2014. AR 287, 291. The agency denied both initial claims on November 17, 2015. AR 170-78. It again denied her claims upon reconsideration on April 20, 2016. AR 185-90. Plaintiff filed a written request for a hearing. AR 191. She appeared to testify at two hearings: First, on May 4, 2018, with ALJ S. Andrew Grace (AR 79); and second, on January 10, 2019, with ALJ Lawrence Lee. AR 34.

After the first hearing, ALJ Grace ordered a consultative exam with Derek Leinenbach, M.D. Dr. Leinenbach examined Plaintiff on July 26, 2018. AR 803-16. In response to ALJ Grace's proposal to enter Dr. Leinenbach's examination into the record (AR 400), Plaintiff requested a supplemental hearing to cross-examine Dr. Leinenbach, due to discrepancies in his report. AR 403. Plaintiff received the supplemental hearing she requested; however, rather than call examining physician Dr. Leinenbach for questioning regarding the report he had authored, ALJ Lee instead had reviewing physician Eric Schmitter, M.D, testify as an expert witness. AR 35, 39-57.

At the 2019 hearing, ALJ Lee granted Plaintiff's request to amend the date of her disability onset to June 24, 2017. AR 13. Plaintiff was born June 24, 1967, and, therefore, her amended alleged disability onset date was her 50th birthday. On February 13, 2019, ALJ Lee denied Plaintiff's request for DIB and SSI. The Appeals Council denied Plaintiff's request for

---

[2] In his opinion, Administrative Law Judge (ALJ) Lee states that Plaintiff filed her applications on July 6, 2015. AR 13. The record shows, however, that Plaintiff made her applications on August 24, 2015. AR 287-96.

review (AR 1), making ALJ Lee's decision the final decision of the Commissioner. Plaintiff

seeks judicial review of that final agency decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter, for Plaintiff's DIB claim, ALJ Lee found that Plaintiff met the insured status requirements of the Social Security Act (Act) through March 31, 2018. AR 15. At step one, ALJ Lee found that Plaintiff had not engaged in substantial gainful activity since June 24, 2017, the amended date of her disability onset. *Id*. At step two, ALJ Lee determined that Plaintiff suffered from the following severe impairments: left shoulder pain partial tear; fibromyalgia; and hypothyroidism. *Id*. ALJ Lee acknowledged other conditions from which Plaintiff suffered, but the ALJ stated that "there is no evidence that these conditions resulted or were expected to result in more than a minimal limitation" on Plaintiff's ability to work for a period of at least 12 consecutive months. AR 16. These other conditions included diplopia, glaucoma, mixed hyperlipidemia, respiratory acidosis, plantar spur, cervical degenerative disc disease, a history of mild chronic obstructive pulmonary disease, and cardiac arrest secondary to severe respiratory depression, a severe reaction to prescribed narcotics and Timolol, complicated by underlying pneumonia. *Id.* Although the ALJ found that these conditions did not constitute severe impairments, he considered their limiting effects in his analysis of Plaintiff's RFC.

At step three, ALJ Lee found that none of Plaintiff's impairments, including the impairments he had classified as severe at step two, met or medically equaled the severity of a listed impairment. *Id*. ALJ Lee next formulated Plaintiff's RFC. AR 16-24. The ALJ determined that Plaintiff had the RFC to perform medium work, with the following additional limitations: "[Plaintiff] can occasionally reach overhead bilaterally and frequently reach in all other directions bilaterally. [She] can occasionally climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to unprotected heights, moving mechanical parts, and operating a motor

vehicle." AR 16 (alterations added). After recounting Plaintiff's medical history and testimony, ALJ Lee stated that, although Plaintiff "is certainly limited to some degree, she is not limited to the extent alleged." AR 24. He found that Plaintiff could perform her past relevant work as an in-home health aid, which the vocational expert classified as a "home attendant." AR 24-25. In the alternative, at step five, ALJ Lee found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including machine packager, laundry worker II, school child care attendant, officer helper, photocopy machine operator, and sales attendant. AR 26. ALJ Lee concluded that Plaintiff is not disabled under the Act from June 24, 2017 through the date of the decision. *Id*.

**DISCUSSION**

Plaintiff alleges that the ALJ erred in: (a) analyzing Plaintiff's subjective symptom testimony; (b) weighing the medical opinion testimony; and (c) evaluating Plaintiff's RFC. The Court addresses each argument in turn.

**A.  Plaintiff's Subjective Symptom Testimony**

**1.  Standards**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

## 2. Analysis

Here, in undertaking the two-step analysis, ALJ Lee determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 22. At step two, however, the ALJ found that Plaintiff's daily living activities contradicted her claimed limitations. The ALJ also found that Plaintiff's limitations due to "musculoskeletal impairments" were not supported by objective medical evidence.[4] These

---

[4] The Court notes that although the Commissioner characterizes the ALJ's reasoning as Plaintiff's symptoms being "inconsistent" with the medical record, the ALJ characterized Plaintiff's limitations as "not supported" by the evidence and described Plaintiff's symptoms as not being supported by the objective medical evidence.

impairments included fibromyalgia, cervical and lumbar spine degenerative disc disease, and plantar fasciitis and tendinitis. ALJ Lee further found that Plaintiff's alleged vision impairments were not supported by objective medical evidence. The ALJ also identified some conflicts in the medical evidence and Plaintiff's alleged limitations.

### a.  Daily living activities

Activities of daily living (ADL) may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

ALJ Lee recited Plaintiff's ADLs as inconsistent with her alleged limitations. The ALJ noted that Plaintiff could "do laundry, vacuum, clean the bathroom, prepare simple meals, go outside alone, and shop in stores," that she picked cherries off a cherry tree (contradicting her alleged shoulder mobility issues), that she managed her personal finances such as paying bills and counting change (contradicting her alleged limitations with manipulation), and that she was able to watch videos, read the Bible, and do jigsaw puzzles (contradicting her alleged visual problems). AR 23. The ALJ also twice cited as evidence of impermissible ADLs Plaintiff's care for her mother. *Id.*

Plaintiff testified that she vacuums for 30 minutes every other week, cleans the bathroom for 20 minutes every other week, does her laundry weekly, and shops weekly. These activities, in addition to the ALJ's comment that Plaintiff prepares simple meals and goes outside by herself, are the minimal attempts at living a normal life that the Ninth Circuit has repeatedly emphasized are not inconsistent with a claim of disability. *See, e.g.*, *Vertigan*, 260 F.3d at 1050. Regarding her picking cherries, Plaintiff described at the time to her physical therapist how she held branches with her post-surgical left arm while she reached with her right arm, that she practiced "reaching up" with her left arm but the motion was "still so limited" and that her shoulder was "very sore" for a few days afterward. AR 653-55. This is not inconsistent with her claimed shoulder limitations.

Plaintiff's alleged "care" of her mother was the minimal cooking and cleaning described above, and does not contradict her claimed limitations. Further, ALJ Lee's opinion did not mention Plaintiff's 2018 testimony before ALJ Grace that Plaintiff lives with her mother "because I have nowhere else to live. I don't want to live on the street," (AR 103), and that her mother did not need help getting in and out of bed or on and off the toilet. AR 84. When,

in 2019, ALJ Lee asked Plaintiff to what extent Plaintiff helped her mother, Plaintiff responded, "Very minimally right now." AR 58. ALJ Lee cited Plaintiff's cooking for her mother in his ADL analysis (AR 23), but when he had asked Plaintiff about her and her mother cooking, Plaintiff had replied, "We both work at it," "We don't do much. It's usually just a bowl of cereal for breakfast and a sandwich for lunch," and "there isn't much cooking." AR 58. Plaintiff's testimony indicates that the assistance she provides to her elderly mother is minimal, much of it incidental to the fact that the two women share a home, and that Plaintiff has no other housing options.

Plaintiff's ability to read the Bible, watch videos, and do jigsaw puzzles is not inconsistent with her limitations. The ALJ did not provide any explanation regarding how these activities were inconsistent with Plaintiff's limitations, but the Court may make logical inferences, and it is logical to infer that the ALJ found this testimony inconsistent with Plaintiff's testimony regarding her vision limitations. Plaintiff testified before ALJ Grace that she had "prisms" in her glasses, and that, before the prisms in her glasses, Plaintiff had terrible problems with "depth and distance vision." AR 86. She also testified that things are better with the prisms but that sometimes she still has problems with depth perception. AR 86-87. She further testified, however, that she can read a standard magazine article for "about a half hour." AR 87. The ALJ did not provide any evidence or explanation that Plaintiff was reading the Bible or performing the other activities inconsistently with her stated ability of being able to read for periods shorter than around 30 minutes.

### b.  Inconsistencies in the medical evidence

ALJ Lee noted several items he considered to be inconsistencies in the medical record. First, he concluded that a December 2018 hospital record that stated Plaintiff "denied neck pain" was inconsistent with her claims. AR 22. The December 2018 hospital visit, however, was

Plaintiff's inpatient treatment at the emergency department of Good Samaritan Regional Medical Center in Corvallis, when Plaintiff was transported after her mother found her unresponsive in the family home. AR 849. Plaintiff suffered a cardiac event, and she had to be intubated. *Id.* Thus, the hospital records from that stay reflect emergency medical providers' priority: restoring Plaintiff's cardiac and respiratory health in the immediate aftermath of her cardiac arrest. The fact that Plaintiff was not focused on her neck pain while being treated for a heart attack is not an inconsistency that provides a clear and convincing reason to discount Plaintiff's testimony.

ALJ Lee also used these December 2018 cardiac-event records to support his conclusion that there were inconsistencies between the medical evidence and Plaintiff's vision problems. The ALJ wrote that Plaintiff "told her ophthalmologist in December 2018 that she wanted to wait until spring to have glaucoma surgery, which indicates that her limitations were not as significant as she alleged." AR 23. The ophthalmologist visit took place December 18, 2018, slightly more than one week after Plaintiff had been released from emergency inpatient treatment for cardiac arrest. Considering the heart attack that Plaintiff suffered on December 3, and the resulting weeklong inpatient treatment, Plaintiff's preference on December 18 to wait a few months to have surgery is not a clear and convincing reason to conclude that her vision limitations were any different than she alleged.

The other inconsistency that the ALJ noted is that Plaintiff's vision was correctable with prism bars. Plaintiff, however, testified to ALJ Grace that her vision improved with the prism lenses, but that she still had some problems with depth perception and some limitations. The fact that the ophthalmologist "prescribed appropriate prism corrective lenses" (AR 23) is not inconsistent with Plaintiff's testimony. To the contrary, Plaintiff testified to that fact, providing further context that ALJ Lee appears to have ignored. AR 86-87, 101.

### c.  Objective medical evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the other reasons given by the ALJ were not clear and convincing reasons supported by substantial evidence, the fact that the ALJ found Plaintiff's claimed limitations not supported by the objective medical evidence cannot, standing alone, support discounting Plaintiff's subjective testimony.

## B.  The Medical Opinions

### 1.  Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[5] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20

---

[5] Because Plaintiff filed her application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan*, 246 F.3d at 1202; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d
at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while
doing nothing more than ignoring it, asserting without explanation that another medical opinion
is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive
basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286
(noting that an ALJ effectively rejects an opinion when he or she ignores it).

   "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and
thorough summary of the facts and conflicting clinical evidence, stating his interpretation
thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In
other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own
interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d
at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-
examining medical advisor cannot by itself constitute substantial evidence that justifies the
rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec.
Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of
non-treating or nonexamining physicians may serve as substantial evidence when the opinions
are consistent with independent clinical findings or other evidence in the record).

   An ALJ may consider the lack of corroborating objective medical evidence as one factor
in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857
(9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not
fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R.
§ 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the
intensity and persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does not

substantiate your statements").

### 2. Jerry Flaming, D.O., Treating Physician

Dr. Flaming was Plaintiff's primary care physician. On March 27, 2018, he completed a

medical source statement. AR 703-05. ALJ Lee summarized Dr. Flaming's conclusions, that

Plaintiff

> was unable to walk even one block without rest or severe pain;
> could not sit, stand or walk less than 2 hours in an 8-hour workday;
> would need to shift positions at will; would need to take
> unscheduled 5 to 10 minute breaks more than once per hour in
> addition to normal work breaks due to chronic pain and fatigue.

AR 24. ALJ Lee went on to recount Dr. Flaming's opinion that Plaintiff

> could rarely lift 10 pounds and only occasionally lift less than 10
> pounds; rarely twist, stoop, or climb stairs; never crouch, squat, or
> climb ladders; rarely reach overhead; occasionally reach in all
> other directions; occasionally push/pull, handle, finger, and feel
> due to arthralgias and fibromyalgia.

*Id.* ALJ Lee noted Dr. Flaming's conclusion that Plaintiff "would be absent more than 2 days per

month." *Id*. Dr. Flaming's report also concluded that Plaintiff could never left 20 or 50 pounds.

AR 704.

ALJ Lee does not state to what extent he weighed Dr. Flaming's conclusions. The ALJ's

opinion first analyzed the medical opinion of reviewing physician Dr. Eric Schmitter (AR 23),

and then that of examining physician Dr. Derek Leinenbach. AR 24. In both instances, ALJ Lee

explicitly stated what weight he gave to each of those doctors' opinions. ALJ Lee made no such

statement about Dr. Flaming's opinion. The Court infers (as Plaintiff has inferred) that ALJ Lee

rejected Dr. Flaming's opinion, because the RFC differs significantly from Dr. Flaming's

recommendations. Additionally, ALJ Lee appears to provide reasons for discounting

Dr. Flaming's opinion by stating that the doctor's "corresponding treatment notes show that

[Plaintiff] requested completion of the form from her attorney, and Dr. Flaming's assessment was based on [Plaintiff's] self-reported history and symptoms, which were not corroborated by objective findings." AR 24.

Plaintiff argues that ALJ Lee should have given Dr. Flaming's opinion the greatest weight because Dr. Flaming is Plaintiff's treating physician and his opinion is supported by the record. Plaintiff also argues that ALJ Lee did not provide specific and legitimate reasons for rejecting Dr. Flaming's opinion.

Although reliance on a claimant's discredited subjective complaints is a specific and legitimate reason for rejecting a treating physician's opinion, the Court has already determined that ALJ Lee erred in discrediting Plaintiff's subjective symptom testimony. After that reason is stricken from his conclusions, ALJ Lee's remaining reason for rejecting the treating doctor's testimony is that Plaintiff requested that Dr. Flaming complete "a form from her attorney." AR 24. Requesting that a medical provider complete a form provided by an attorney is not a specific and legitimate reason to reject an opinion from Plaintiff's treating physician absent evidence of actual improprieties, which the ALJ did not cite. *See, e.g.*, *Lester*, 81 F.3d at 832 (stating that in the absence of "evidence of actual improprieties" an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits" and that "the fact that the examination was conducted at the request of an attorney is relevant where the opinion itself provides grounds for suspicion as to its legitimacy"). Thus, ALJ Lee merely offered his conclusion, without setting forth his own interpretations and explaining why his interpretations, rather than Dr. Flaming's, were correct. This was error. *See, e.g.*, *Reddick*, 157 F.3d at 725.

### 3. Derek Leinenbach, M.D., Examining Physician

#### a. Dr. Leinenbach's opinions

Examining physician Dr. Leinenbach saw Plaintiff twice and submitted three opinions: the first, a consultative evaluation he provided Plaintiff on October 28, 2015 (AR 485-88); the second, the narrative report from a second consultative exam on July 26, 2018 (AR 803-09); and the third, a check-the-box form attached to the July 2018 narrative report. AR 810-15. The Court distinguishes between the two reports that Dr. Leinenbach completed in July 2018 because the narrative and the check-the-box reports conflict in several ways.

In October 2015, Dr. Leinenbach concluded that Plaintiff could sit, stand, and walk without limitation and was limited to climbing occasionally. AR 487. The doctor added that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could reach occasionally with the left upper extremity; could handle, finger, and feel without limitation; and could never work at unprotected heights. AR 487-88. Dr. Leinenbach found no other postural, manipulative, or environmental limitations. *Id.*

Dr. Leinenbach's conclusions of July 2018, however, conflict somewhat. First, in his narrative report, the doctor states that Plaintiff had no limitations to standing, walking, or sitting; that her ability to lift or carry was "limited to 20 pounds occasionally and 10 pounds frequently, due to" her bilateral rotator cuff syndrome and her fibromyalgia; that her climbing was "limited to an occasional basis," also due to her bilateral rotator cuff syndrome and her fibromyalgia; and that she had "no other postural limitations." AR 808. Dr. Leinenbach stated that Plaintiff could reach bilaterally overhead occasionally, due to her bilateral rotator cuff syndrome, but that she had "no handling, fingering, or feeling limitations." AR 809. He added that she "should not work at unprotected heights," due to her "[e]xopthalmos status post bilateral eye decompression, residual intermittent bilateral strabismus and diplopia." AR 808-9.

Then, in the check-the-box form provided by the SSA, Dr. Leinenbach in several respects contradicted his narrative report described above. The check-the-box form stated that Plaintiff could occasionally lift and carry up to 50 pounds versus the 20-pound limitation from the narrative report. The check-the-box form also stated that Plaintiff could continuously climb stairs and ramps and that she could occasionally work at unprotected heights. AR 813-14. This conflicts with Dr. Leinenbach's conclusions in the narrative report that Plaintiff could only occasionally climb and that she should not work at unprotected heights.

   **b.  The ALJ's analysis**

ALJ Lee divided the evidence from examining physician Dr. Leinenbach into the October 2015 opinion and the July 2018 opinion; then, ALJ Lee assigned different weights to Dr. Leinenbach's 2015 and 2018 opinions. ALJ Lee did not mention the inconsistencies between the two portions of the 2018 report. The ALJ gave "[o]nly partial weight" to the "2015 opinion with regard to the claimant's ability to sit, stand and walk without limitation; climb ladders, ropes, and scaffolds occasionally, and occasionally reach overhead bilaterally." AR 24. The ALJ stated that the rest of the limitations the doctor identified in his 2015 opinion "were based on the claimant's condition more than a year before the amended onset date, and therefore, of limited value in assessing her condition during the alleged period." AR 24.

As for Dr. Leinenbach's 2018 opinion ALJ Lee stated that he gave "[m]ore weight . . . to Dr. Leinenbach's opinion in his Medical Source Statement Of Ability to Do Work-related Activities (Physical)." *Id*. In other words, ALJ Lee assigned greater weight to the less-restrictive check-the-box form provided by the SSA than he gave to the doctor's more-restrictive narrative report. Although ALJ Lee stated that the SSA check-the-box Medical Source Statement "was attached" to Dr. Leinenbach's "July 2018 report," the ALJ's opinion did not mention the discrepancies between these different portions of Dr. Leinenbach's 2018 medical opinion. The

ALJ's opinion also did not draw attention to these discrepancies when earlier discussing

Dr. Leinenbach's 2018 opinion. AR 21. ALJ Lee added that he had "not adopted all the

limitation set forth in the [2018] assessment completely because they are inconsistent with other

evidence, such as the claimant's report that she was normally able to function independently and

take care of her mother." AR 24 (citing AR 894).

### c. Plaintiff's arguments

Plaintiff argues that the ALJ erred in accepting the less restrictive portion of

Dr. Leinenbach's 2015 opinion because it did not consider Plaintiff's fibromyalgia and did not

consider the newer evidence relating to Plaintiff's impairments. The Court construes this latter

objection as challenging the least restrictive limitations that the ALJ did accept on the same

grounds that the ALJ rejected the more restrictive limitations—the opinion was too old. The

Commissioner argues both that the ALJ did not err by accepting the less-limiting findings in

the 2015 report and that the ALJ properly discounted the more-limiting findings based on the

fact that the report pre-dated Plaintiff's alleged disability onset date. The Commissioner cannot

have it both ways. The same deficiency of the age of Dr. Leinenbach's 2015 opinion affects both

his more restrictive and his less restrictive findings. The problem is that the ALJ accepted the

less restrictive findings as helpful and rejected the more restrictive findings as out-of-date,

without at least explaining why the age of the report affects one but not the other. The ALJ,

however, gave the accepted portion of the 2015 opinion only minimal weight, and thus the error

is harmless.

Plaintiff also argues that the ALJ erred in accepting the 2018 opinion of Dr. Leinenbach

because the opinion was internally inconsistent, it failed to consider all of Plaintiff's conditions,

it conflicted with evidence from the treating sources, and the doctor did not give Plaintiff a

vision exam and yet opined about Plaintiff's vision limitations. Regarding Plaintiff's first

argument, the Commissioner "acknowledges that it would have been helpful" if the ALJ had discussed the discrepancies in Dr. Leinenbach's 2018 opinion. The Commissioner adds, however, that any error is harmless because even if the ALJ had accepted Dr. Leinenbach's more restrictive limitations from the narrative report, that would have resulted in an RFC restricted to "light" work instead of "medium" work, and three of the jobs found at step five are light. Plaintiff replies that this error is just one of many and shows the "haphazard" nature of Dr. Leinenbach's opinion and how it is not supported by the record. Plaintiff notes that this, among the other errors, is why Plaintiff requested a supplemental hearing to cross examine Dr. Leinenbach in the first place (although Plaintiff was not given that opportunity because the ALJ did not call Dr. Leinenbach as a witness in the supplemental hearing). The Court agrees with the Commissioner that Plaintiff fails to show that this alleged error was harmful.

Regarding Plaintiff's arguments that Dr. Leinenbach's opinion fails to consider all of Plaintiff's conditions and conflicts with treating sources, Plaintiff argues that Dr. Leinenbach did not consider Plaintiff's fatigue, degenerative disc disease, plantar fasciitis, and tendonitis. Plaintiff asserts that Plaintiff's treating records contradict Dr. Leinenbach's conclusions, including regarding Plaintiff's range of motion. The Commissioner responds that Plaintiff is merely interpreting the record as she sees it, but that the ALJ is the one tasked with resolving conflicts and ambiguities in the medical record and if there is more than one rational interpretation of the record, the ALJ's interpretation governs. Plaintiff replies that the ALJ's opinion demonstrates that the ALJ cherry-picked the check-box form to support the ALJ's opinion instead of relying on substantial evidence. Although Plaintiff's interpretation of the record may be rational, so is the ALJ's. Under these circumstances, the Court defers to the ALJ. *See Burch*, 400 F.3d at 679.

PAGE 22 – OPINION AND ORDER

Regarding Plaintiff's final argument, although Dr. Leinenbach repeatedly mentions Plaintiff's eye conditions (AR 485, 487-88, 806, 808-09, 813-14), there is no evidence in any of Dr. Leinenbach's reports that he conducted a vision examination on Plaintiff. Nonetheless, in the 2018 check-the-box form that the ALJ favored, Dr. Leinenbach opined that Plaintiff had a visual impairment, but that she would be able "to avoid ordinary hazards in the workplace"; "to read very small print" and "ordinary newspaper or book print"; "to view a computer screen"; and "to determine differences in shape and color of small objects such as screws, nuts or bolts." AR 813. The Commissioner does not specifically respond to this argument. Because there is no evidence that Dr. Leinenbach conducted a vision examination on Plaintiff and he also did not cite to visual examinations by other medical providers in the record, the Court cannot know on what basis Dr. Leinenbach drew these conclusions about Plaintiff's visual impairments. ALJ Lee, however, did not indicate that he accepted (or rejected) Dr. Leinenbach's unsupported conclusions regarding Plaintiff's vision impairments. AR 24. In describing the opinions of Dr. Leinenbach that the ALJ was accepting and discounting, the ALJ was silent with respect to this Dr. Leinenbach's opinion regarding Plaintiff's vision. The Ninth Circuit has held that an ALJ effectively rejects an opinion if the ALJ ignores it. *Smolen*, 80 F.3d at 1286. The Court concludes that the ALJ rejected Dr. Leinenbach's opinion relating to Plaintiff's vision limitations. Accordingly, the ALJ did not err in this regard. After considering Plaintiff's challenges to Dr. Leinenbach's testimony, the Court finds that the ALJ did not err in considering Dr. Leinenbach's opinions.

### 4. Eric Schmitter, Reviewing Physician

Non-examining reviewing and testifying physician Dr. Schmitter concluded that Plaintiff's condition did not meet or equal a listing "from an orthopedic viewpoint," that she would have some impairment with overhead lifting, but that otherwise she would not have any

limitations. AR 45-46. Dr. Schmitter also concluded that Plaintiff's cervical disc degeneration was normal for someone over the age of 50 and that her imaging did not show any neurologic impingement. AR 55.

ALJ Lee stated that he "accords significant weight to the opinion by medical expert Dr. Schmitter" because he "is a specialist in orthopedic surgery, and his opinion was consistent with the available evidence at the hearing." AR 23. ALJ Lee added that he found "no objective evidence in the post-hearing evidence to conflict with Dr. Schmitter's opinion as to the limiting effects of the impairments he identified." *Id*.

Plaintiff argues that the ALJ erred in heavily weighing Dr. Schmitter's testimony. Plaintiff makes three objections to ALJ Lee's weighing of Dr. Schmitter's opinion—that his opinion is based on an incomplete review of the record, that his treatment of fibromyalgia is contrary to Social Security Ruling (SSR) 12-2p, and that he did not consider Plaintiff's subjective symptoms because Dr. Schmitter assumes all Social Security claimants exaggerate such symptoms. The Court will analyze in turn each of Plaintiff's three objections regarding Dr. Schmitter.

### a.  Incomplete review of the record

Plaintiff contends that Dr. Schmitter's opinion is not supported by the record because it is based on an incomplete review of the record. Dr. Schmitter is a reviewing physician who has never treated or examined Plaintiff. It is critical that he be familiar with Plaintiff's medical record because that record, and not any examination of Plaintiff, is the basis for Dr. Schmitter's opinion. Plaintiff offers four examples to support her argument that Dr. Schmitter based his opinion on an incomplete review of the record—Dr. Schmitter's testimony regarding Plaintiff's spine disorder, fibromyalgia, adhesive capsulitis, and decreased muscle strength.

ALJ Lee asked Dr. Schmitter about Plaintiff's cervical and lumbar degenerative disc disease. Dr. Schmitter replied, "I didn't find much," and, when ALJ Lee asked him the same question again, the doctor repeated "I didn't find much," and then that "I don't have anything really that documents a spine disorder." AR 41-42. The record, however, includes several mentions of Plaintiff's degenerative disc and joint disease, advanced at C4-5, including objective medical testing that resulted in Plaintiff's diagnosis. AR 532-33, 675-76, 710.

Initially, Dr. Schmitter denied that Plaintiff had fibromyalgia. AR 42. The record repeatedly discusses Plaintiff's fibromyalgia.[6] When ALJ Lee asked the doctor whether he saw "any sort of tender points test for the fibromyalgia," Dr. Schmitter replied, "No. I did not see it documented according to Federal standards." *Id*. ALJ Lee then pointed Dr. Schmitter to the exhibits in which Drs. Flaming and Leinenbach discuss Plaintiff's fibromyalgia, citing AR 703-05 and AR 806-15. "There's nothing to substantiate the initial one," Dr. Schmitter said, regarding treating physician Dr. Flaming's fibromyalgia finding. AR 43. "I mean it just isn't there. There's, there's no document." *Id*. The record includes many documents supporting Plaintiff's fibromyalgia diagnosis. *See* AR 703-05, 806-15; *see also* fn. 6, *supra*. Dr. Schmitter continued, "Now I think, you know, obviously, that doctor[7] may be taking it more from the patient's complaint point of view . . . But from an objective findings point of view, it simply is not substantiated." AR 43. Shortly thereafter, Dr. Schmitter stated, "Oh, wait a minute, here it is,

---

[6] The record mentions or discusses Plaintiff's fibromyalgia at, *e.g.*, AR 466, 485, 487, 490, 538, 570, 606, 616, 633, 667, 703, 707, 747, 791, 806, 808, 818, and 824.

[7] It is not clear in the record, but it appears to the Court "that doctor" is most likely a reference to Dr. Flaming.

sir . . . she tests positive 18 out of 18 tender points,[8] so I'll have to rescind that. I didn't see that before. So that suggests she qualifies for the fibromyalgia test." *Id.*

After Dr. Schmitter confirmed his opinion that Plaintiff did in fact have fibromyalgia, the ALJ asked him whether Plaintiff had "any other severe impairments that you could find in the record." AR 45. Dr. Schmitter replied, "Not in my notes," but added, "Well, yes, hypothyroidism which is not my area of expertise." *Id.* Asked about Plaintiff's limitations, Dr. Schmitter listed reaching overhead. AR 46.

Plaintiff's attorney stated that Plaintiff had been diagnosed with adhesive capsulitis, and she directed Dr. Schmitter to "13F, 28," where he could find the diagnosis in the record. *Id.*, *see also* AR 733. Although the attorney directed Dr. Schmitter to a diagnosis made by orthopedic surgeon Gerald Butler, M.D. (AR 733), Dr. Schmitter gave no indication that he had turned to that page of the record and examined the diagnosis; instead, he stated, "I have to say I don't think as much about physical therapist evaluation as an orthopedic surgeon and if she had a problem, why wasn't she evaluated for her right shoulder? Why is there no orthopedic evaluation there?" AR 52. In addition to orthopedic surgeon Dr. Butler's diagnosis of adhesive capsulitis, Dr. Butler also conducted an orthopedic examination of Plaintiff. AR 710. Dr. Schmitter, however, focused

---

[8] A doctor may diagnose his patient with fibromyalgia if she has a "history of widespread pain—that is, in all quadrants of the body" and tests positive for at least 11 out of 18 tender points. SSR 12-2p, *available at* 2012 WL 3104869, at \*2-\*3. "Pursuant to SSR 12-2p, tender-point examinations themselves constitute objective medical evidence of fibromyalgia. The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment." Carolyn A. Kubitschek & Jon C. Dubin, SOC. SEC. DISABILITY LAW AND PROC. IN FED. CT., § 5:71 (Feb. 2021 update).

on the physical therapy records,[9] and stated that "there's nothing wrong with her elbow," and, "That's not reasonable." AR 52.

Regarding muscle strength, Plaintiff's counsel directed Dr. Schmitter's attention to a chart note from a physical therapist discussing decreased muscle strength. Dr. Schmitter responded, "I think you're correct based on this" and then proceeded to comment that he did not believe "physical therapists do as well" as "orthopedic surgeons because we know more of what we're looking for." AR 50. Plaintiff's counsel then asked if the decreased muscle strength would support a lifting limitation. Rather than answer that question, Dr. Schmitter responded by generally discussing what he viewed as "conflicts" with the types of lifting and arm positions in the "Federal system of residual functioning capacity." AR 51.

Dr. Schmitter's testimony demonstrates that he was unfamiliar with Plaintiff's diagnoses and treatment for degenerative disc and joint disease (including the objective medical testing that resulted in the diagnosis), adhesive capsulitis, and fibromyalgia; as well as unfamiliar with her examinations by an orthopedic surgeon. All the diagnoses, examinations, and post-operative pain with which Dr. Schmitter was unfamiliar are supported throughout the record.

### b.  Consideration of fibromyalgia

Plaintiff argues that Dr. Schmitter's analysis of Plaintiff's fibromyalgia is contrary to SSR 12-2p. Since July 2012, SSR 12-2p has provided "guidance on . . . how [ALJs] evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." *Id*. at *1. Fibromyalgia (called "FM" throughout the SSR) "can be the basis for a finding of disability." *Id*. at *2. SSR 12-2p provides that "[t]he evidence must document

---

[9] Physical therapy records document Plaintiff's adhesive capsulitis at AR 522, 524-30, 534-35, 546-59, 564, 573, 575-80, 583, 587-93, 595, 597, 598-600, 610-12, 659-60, 703, and 763-72.

that the physician reviewed the person's medical history and conducted a physical exam." *Id.* at *2. SSR 12-2p further instructs that the agency decisionmaker must "review the physician's treatment notes" when analyzing a claim based on fibromyalgia. *Id*. Dr. Schmitter did not conduct a physical exam of Plaintiff.

It was when ALJ Lee asked Dr. Schmitter about medication for fibromyalgia that the doctor expressed opinions inconsistent with SSR 12-2p's guidance on fibromyalgia treatment, and contrary to Ninth Circuit case law and persuasive Seventh Circuit case law. Dr. Schmitter testified,

> I think fibromyalgia is fairly well established of depression and . . . as an orthopedist, I've seen people with that diagnosis and inevitably is they're going to get better. You treat their depression with anti-depressive medication and increase physical activities, not decrease because there's usually really no objectively recognized limitations before the feeling but not true loss of function, nor is there any good objective evaluation in terms of X-rays, MR, lab studies or clinical exam that really substantiates it other than . . . when they have multiple pain points, so I don't think there is dedication other than anti-depressive medications, which is effective for fibromyalgia.

AR 44. SSR 12-2p does not mention anti-depressive medications as fibromyalgia treatment, nor does it tie fibromyalgia to depression. Like the claimant suffering from fibromyalgia in *Benecke*, Plaintiff suffers from the condition's common symptoms, "include[ing] chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Benecke*, 379 F.3d at 590. The Ninth Circuit in *Benecke* stated that "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id*.

In a Social Security treatise, the authors, after quoting the above passage from *Benecke*, state:

> It is, therefore, not surprising that the nature of fibromyalgia is also misunderstood by ALJs. Fibromyalgia patients generally present no objectively alarming signs. There are no objective tests which can be used to conclusively confirm a diagnosis of fibromyalgia. Fibromyalgia's symptoms are entirely subjective; there are no laboratory tests for the presence or severity of fibromyalgia.

Carolyn A. Kubitschek & Jon C. Dubin, SOC. SEC. DISABILITY LAW AND PROC. IN FED. CT., § 5:71 (Feb. 2021 update) (simplified). The treatise goes on to describe SSR 12-2p, in 2012, as a "sea change," noting that an ALJ's "failure to follow the dictates of the 2012 ruling, SSR 12-2P at 2, constitute[s] reversible error. The lack of objective test results, however, does not entitle the ALJ to discount a diagnosis of fibromyalgia." *Id.* (simplified). The Seventh Circuit found reversable error when an ALJ rejected a doctor's opinion "because it rested mainly on [the plaintiff's] reports of pain," when the plaintiff's fibromyalgia "cannot be measured with objective tests." *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017).

Several health care providers took note of Plaintiff's depression. *See, e.g.*, AR 747. Dr. Flaming, for example, discussed with Plaintiff "the relationship between her abusive childhood, current depressive, symptoms, and chronic pain." AR 751. Of the many medical providers who treated or examined Plaintiff throughout the five years of medical records, however, none suggested that anti-depressants treat fibromyalgia, nor did any provider state that fibromyalgia is caused by depression. Dr. Schmitter is the only medical professional in the record who made those claims. There are some pain-relieving anti-depressants that have been used as an option to treat fibromyalgia. *See, e.g.*, *Jackson v. Colvin*, 2014 WL 5148438, at *5 (D. Or. Oct. 14, 2014) (noting that "pain-relieving antidepressants [] at times can be helpful for some fibromyalgia patients"); *Sharpe v. Colvin*, 2013 WL 6483069, at *4 (C.D. Cal. Dec. 10, 2013) ("Savella is an antidepressant indicated for the treatment of fibromyalgia." (quoting *Nicholson v. Colvin*, 2013 WL 4058243, at * 7 n. 27 (E.D. Mo. Aug.12, 2013)). This does not mean, however,

that "inevitably" fibromyalgia patients will get better when treated with anti-depressants. As the

Ninth Circuit has stated, fibromyalgia is considered to be without a cure. *Benecke*, 379 F.3d

at 590.

### c.  Consideration of Plaintiff's subjective symptoms

Plaintiff's attorney asked Dr. Schmitter, "is pain a factor in determining a person's ability

to, to function in terms of lifting and that kind of thing?" AR 56. Dr. Schmitter replied,

> Yeah, but that's all in the subjective range and I interpret my role
> is to get their objective evidence that substantiates subjective
> complaints and I think that just trying to correlate the severity of
> pain is always haphazard. . . . I can't tell you how many times
> people rate it's 10 over 10. It's absurd because 10 over 10 would
> be somebody in a dark room on a morphine drip, so people tend to
> exaggerate which is normal human response, but I don't know that
> I can accurately define and, and correlate pain complaints with the
> actual results of function. This is very difficult. I try to stay away
> from that because I'm looking for evidence. . . . Objective
> evidence.

*Id*.

Dr. Schmitter, the ALJ, and the Commissioner pointed to no evidence in the record that

Plaintiff ever rated her pain "10 over 10." Plaintiff's attorney responded to Dr. Schmitter's

comment by asking him whether "there was any indication that" Plaintiff had "embellished her

pain levels at all." *Id*. Dr. Schmitter replied,

> I could not say yes or no. Most do because that's why we're here. I
> mean I find that most of the time people, they have a vested
> interest in it to exaggerate their symptoms, but that's okay. I try to
> stay away from the subjective elements and concentrate on the
> objective findings and that's what I tried to do here.

*Id*.

Although pain is subjective, Dr. Schmitter's statement that he tries to "stay away from"

subjective evidence is problematic for three reasons. First, the ALJ must consider a claimant's

subjective symptom evidence; thus, a medical expert who refuses to consider subjective evidence

will be less useful to the ALJ in making his disability determination. Second, although some patients may exaggerate their symptoms, there is no evidence in the record that Plaintiff exaggerated her symptoms. Third, Plaintiff suffers from fibromyalgia. As discussed above, fibromyalgia is a condition that involves chronic and at times debilitating pain that cannot be objectively measured. It necessarily relies on a claimant's subjective complaints. *Benecke*, 379 F.3d at 590. Dr. Schmitter's statements that he stays away from subjective symptom evidence unless he can corroborate it with objective evidence, combined with his incorrect understanding of fibromyalgia treatment, creates doubt as to the validity of Dr. Schmitter's opinions regarding fibromyalgia, and regarding Plaintiff's pain in general.

### d.  Conclusion

The Commissioner's only response to all of Plaintiff's arguments regarding Dr. Schmitter's testimony is that Plaintiff is disagreeing with the medical evidence and there is no basis for the Court to displace the ALJ's reasonable findings relating to Dr. Schmitter. The Court disagrees. As discussed above, there were significant problems with Dr. Schmitter's testimony that the ALJ did not address. The ALJ erred in his consideration of Dr. Schmitter's opinion.

## C.  RFC Assessment

A claimant's RFC "is the most [she] can still do despite [her] limitations," and refers to the most the claimant can do in a work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). She can work on a regular and continuing basis if she can work eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p, *available at* 1996 WL 374184, at *2. The ALJ formulates the claimant's RFC by considering all medically determinable impairments, including those impairments which the ALJ found to be "not severe" at step two of the sequential evaluation." 20 C.F.R. §§ 404.1545(a)(2) and (e); 416.945(a)(2) and

(e). In determining the RFC, the ALJ must consider the "total limiting effects" of all the medically determinable impairments, both "severe" and "non-severe," including the effects of pain. 20 C.F.R. §§ 404.1545(e); *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)) (An RFC is defective when it fails to set out all the claimant's limitations and restrictions.).

The RFC must include all credible symptom allegations. "Because the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC." *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.6 (9th Cir. 2017) (as amended)). Where the claimant alleges symptoms such as pain, the ALJ's discussion must analyze objective medical facts and other evidence, and the ALJ's personal observations when appropriate; resolve any material inconsistencies in the evidence as a whole, including why symptom allegations by the claimant are or are not consistent with the record; and logically explain the effects of alleged symptoms on the claimant's overall ability to perform regular work. SSR 96-8p, at *7. Because the Court has found that the ALJ erred in considering Plaintiff's subjective testimony and the medical evidence, the RFC also needs to be reconsidered.

**D.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Plaintiff argues that the Court should remand for benefits. The Court finds, however, that the record is not free from conflicts and ambiguities and that there are outstanding issues that remain. Accordingly, remand for further proceedings is appropriate.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 15th day of April, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge